IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION



| | | |
|---|---|---|
| SAFOCO, INC. | § | |
| | § | |
| *PLAINTIFF*, | § | |
| | § | |
| v. | § | CASE NO. 2:22-cv-00437 |
| | § | |
| KLX ENERGY SERVICES, LLC | § | |
| | § | JURY TRIAL REQUESTED |
| *DEFENDANT.* | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, Safoco, Inc. ("Safoco" or "Plaintiff") files this Original Complaint against Defendant KLX Energy Services, LLC ("KLX Energy" or "Defendant") for infringement of U.S. Patent No. 9,671,794 ("the '794 Patent") and U.S. Patent No. 9,890,609 ("the '609 Patent") (collectively, the "Safoco Patents") and for false advertising and unfair competition under Section 43(a) of the Lanham Act.  Safoco would show the Court the following:

### PARTIES

1.      Plaintiff Safoco, Inc., is a Texas corporation with its principal place of business at 9901 Regal Row, Houston, Texas 77040.  All pleadings may be served on Safoco through its attorney-in-charge, David K. Anderson, Anderson & Cunningham, P.C., Four Houston Center, 1221 Lamar, Suite 1115, Houston, Texas 77010.

2.      Defendant KLX Energy Services, LLC is a Delaware limited liability company with its principal place of business and corporate headquarters at 3040 Post Oak Blvd., 15th Floor, Houston, Texas 77056.  Defendant may be served with process through its registered agent, Capitol Corporate Services, Inc., 1501 S. Mopac Expy., Suite 220, Austin, Texas 78746.  Defendant

maintains a physical office in this judicial district, and Defendant's office is a regular and established place of business.

<strong>JURISDICTION AND VENUE</strong>

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1367 because this is an action for (1) patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 271, *et seq.*, and (2) false advertising and unfair competition under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*

4.      The Court has specific and general personal jurisdiction over Defendant, pursuant to due process and the Texas Long Arm Statute for the following reasons: Defendant is present within or has minimum contacts within the State of Texas and the Eastern District of Texas; Defendant has purposefully availed itself of the privileges of conducting business in the State of Texas and the Eastern District of Texas; Defendant has sought protection and benefit from the laws of the State of Texas; Defendant regularly conducts and/or solicits business and engages in other persistent courses of conduct within the State of Texas and within the Eastern District of Texas; Defendant maintains a  regular and established place of business  within the Eastern District of Texas; and Defendant has derived substantial revenues from its business activities, including its infringing acts, occurring within the State of Texas and the Eastern District of Texas.

5.      Defendant directly and/or through authorized intermediaries, ships, distributes, offers for sale, sells, leases, markets, and/or advertises products and services in the United States, the State of Texas, and the Eastern District of Texas, including but not limited to the accused frac relief valve systems.  Defendant solicits customers in the State of Texas and in the Eastern District of Texas.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b).    Defendant has transacted business in this judicial district and has directly and indirectly committed and/or induced acts of patent infringement in this district.    Defendant has its physical regular and established place of business in this district located at 5104 Estes Parkway, Longview, Texas 75603.

<u>**PATENTS IN SUIT**</u>

7.      Safoco and Defendant are direct competitors in the oil and gas equipment industry for fracturing relief safety valves.    Safoco sells/leases the "Safoco FRV."    Defendant sells/leases its "KLX Frac Relief Valve System", which is marketed as and called the "FRV" or "FRVS."    The Defendant's "FRV" is strikingly similar in appearance, layout, and operation to the Safoco FRV.

8.      Safoco has spent considerable resources researching, developing, and commercializing innovations in the oil and gas equipment industry.    As a result of these efforts, Safoco has a substantial patent portfolio, including the '794 Patent and the '609 Patent.    Specifically, Safoco has spent considerable resources researching, developing, and commercializing innovations regarding its FRV.

9.      On June 6, 2017, the '794 Patent, entitled "Safety Valve Control System and Method of Use", was issued by the United States Patent and Trademark Office.    Safoco is the owner of the '794 Patent.[1]    A true and correct copy of the '794 Patent is attached as Exhibit A and incorporated herein by reference.    The '794 Patent covers a safety valve control system for oil and

---

[1] The '794 Patent is a continuation of Application No. 15/262,642, filed on September 20, 2017, which is a continuation of Application No. 13/480,704, filed on May 25, 2012, now U.S. Patent No. 9,441,453, a continuation in part of Application No. 13/195,662, filed on August, 1, 2011, following Provisional Application No. 61/551,319, filed on October 25, 2011, Provisional Application No. 61/415,238, filed on November 18, 2010, and Provisional Application No. 71,370,721, filed on August 4, 2010.

gas wells, particularly systems and methods of an emergency shut down control system for surface and subsurface safety valves.

10.     On February 13, 2018, the '609 Patent, entitled "Safety Valve Control System and Method of Use", was issued by the United States Patent and Trademark Office.[2]   Safoco is the owner of the '609 Patent.  A true and correct copy of the '609 Patent is attached as Exhibit B and incorporated herein by reference.   The '609 Patent covers a safety valve control system for oil and gas wells, particularly systems and methods of an emergency shut down control system for surface and subsurface safety valves.

11.     Safoco is the valid owner of all rights, title, and interest in the '794 Patent and the '609 Patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '794 Patent and the '609 Patent. Accordingly, Safoco possesses the exclusive right and standing to prosecute the present action for Defendant's infringement of these Safoco Patents.

12.     At all times relevant to this litigation, KLX Energy had actual and constructive notice of the Safoco Patents.

13.     Defendant KLX Energy now makes, manufactures, distributes, sells and/or leases a safety valve control system for oil and gas wells – the "KLX Energy Frac Relief Valve System" - in direct competition with Safoco ("Infringing Product").

14.     Defendant KLX Energy, without authority, consent, or license from Safoco, has infringed and is still infringing the Safoco Patents by making, using, importing, leasing, selling, or offering to sell or lease the Infringing Product.

---

[2] The '609 Patent is a continuation of Application No. 13/480,704, filed on May 25, 2012, now U.S. Patent No. 9,441,453, a continuation in part of Application No. 13/195,662, filed on August 1, 2011, following Provisional Application No. 61/551,319, filed on October 25, 2011, Provisional Application No. 61/415,238, filed on November 18, 2010, and Provisional Application No. 71,370,721, filed on August 4, 2010.

## BACKGROUND INFORMATION

15.     Since 1993, Plaintiff Safoco has been in the business of developing, manufacturing, and selling oilfield equipment, particularly safety equipment for use in oilfield applications. Several years ago, Plaintiff Safoco embarked on a costly and time-consuming effort to develop a safety control system.  This design and development led to Safoco's Safety Automated Monitoring Instrument — a Safoco product that is identified by the acronym "SAMI."  Safoco's SAMI product has enjoyed considerable market acceptance and success.  Plaintiff Safoco's SAMI is a cost-effective, custom solution for fully automated and remotely controlled surface safety valves.  With this technology and its existing valve technology, Plaintiff later developed the Safoco FRV – a cutting edge product that has brought technological advancements to pressure monitoring and relief valve systems for hydraulic fracturing applications.  The design effort associated with the FRV was also costly, and it took approximately a year of intense engineering and design effort to take the project to a testable product.  The Safoco FRV was not only a new product in the Safoco line of products, the Safoco FRV was a new product in the oil and gas market.  Prior to the Safoco FRV, the industry relied on mechanical products, such as burst disks and explosion panels.

16.     The Safoco FRV is a safety device that senses defined pressure parameters, evaluates those readings, and when required, opens a valve(s) with incredible speed and efficiency, usually within milliseconds (1 millisecond = 0.001 or $10^{-3}$ of a second).  The Safoco FRV is used to relieve over pressurization events during well fracturing operations when the pressure parameters exceed predetermined limits.  In hydraulic fracturing operations, a mixture of primarily water and sand is pumped through the well into the underground formation at extremely high pressures.  If the pressure exceeds maximum allowable pressure parameters, it can cause damage to well equipment, and in extreme cases, it can cause the piping and other well equipment to

rupture, seriously damaging wellhead equipment and posing extreme risk of harm to onsite personnel.  Pressure pumping companies have long required a mechanism to relieve over pressure events to ensure the safety of on-site workers and prevent damage to the pumping system and the well formation.

17.    Plaintiff Safoco's innovative FRV monitors pressures electronically, records that data, analyzes that data, and when the pressures exceed the programmed safety criteria, the FRV trips its "fail open" hydraulic actuator, which opens a gate valve, and thereby instantaneously brings the pressure down to safe levels.  The FRV can be reset, and the valves can be opened remotely and automatically if desired.  The pumping pressure is sensed by pressure transducers that are components of the FRV.  The acceptable pressure parameters can be programmed into the FRV's microprocessor in the field via a keypad interface.  The valve is held in the closed position by hydraulic fluid until a pressure event or series of events causes the FRV to trigger the hydraulic actuator, releasing the hydraulic fluid in the actuator and opening the gate valve.  The electronic control system reads and records the pressure, and it will trip the hydraulic actuator when the pressure parameters exceed programmed limits.  The valve is forced into the open position immediately by the line pressure in the valve and an internal spring within the actuator.  The system is completely self-contained, requiring no external power source.  The line pressures are monitored and controlled by the system, and the system records all pressure readings, settings, and trip events. The Safoco FRV helps frac companies maximize frac site safety and yield; it mitigates potential liabilities; and reduces non-production time.  The FRV allows for much more precise and sophisticated safety control.  The FRV continuously monitors and analyzes pressure conditions at the frac site; whereas the existing mechanical devices simply rupture when the pressure exceeds that device's mechanical limits.

6

18.     In 2017, Safoco attended and exhibited its FRV at an industry trade show in San Antonio, Texas.   During the trade show, a group of Safoco employees were approached by a former KLX Energy employee who informed them that KLX Energy had intentionally copied the Safoco FRV when developing its Infringing Product.  The former employee stated that "KLX is infringing on [Safoco's patents].  I'm the engineer who designed it, so I know."

19.     During that industry trade show, Safoco representatives went to the Defendant's booth to look at the Defendant's Infringing Product.  The KLX Energy booth was located near the Safoco booth, and KLX had its "FRV" unit displayed.   The Safoco representatives noted that the Defendant's Infringing Product was virtually identical, a "mirror image" or "replica" of the Safoco FRV.  The representatives also noted that KLX was referring to the device as the "FRV" or "FRVS" and that KLX Energy was using those terms in its marketing and promotional materials. While the valves used by the Defendant were double-acting, the valves utilized on the Infringing Product were gate valves.

20.     Dave Lymberopoulos, the CEO of Safoco, introduced himself to the on-site KLX Energy representatives, which included an employee identified as a company Vice-President.  Mr. Lymberopoulos informed the Defendant's representatives that the Defendant's "FRV" was a copy of the "Safoco FRV".  One of the Defendant's representatives responded by asking, "Well, do you have any recommendations how to make [the KLX Energy] unit better?"  Mr. Lymberopoulos responded by requesting that KLX Energy remove the copied KLX Product from the market.

21.     Defendant advertises its FRV as "proprietary technology," and represents that KLX Energy was the developer of that frac relief valve technology.  For example, on the company's website, Defendant advertises that the KLX Energy FRV utilizes "proprietary 'fail-open' design

and self-reporting diagnostic alert to ensure total field safety."[3]  Similarly, Defendant KLX Energy advertises that the company offers "[p]roprietary technologies such as the KLX Automated Frac Relief Valve System – an automated alternative to conventional pop-off valves.  This new solution brings more assurance, reliability, and redundancy to pressure control."[4]  These statements falsely represent that Defendant KLX Energy was the developer of this frac relief technology, including the "fail open" design and "self-reporting diagnostic alert", when in fact Safoco was the developer of this proprietary frac relief technology.

22.    Defendant's promotional materials for the KLX Energy FRV described the system as an "innovative alternative to the standard popoff valve that offers more control over pressure during hydraulic fracturing operations."  Defendant further represented that KLX Energy was "the only company that rents the Frac Relief Valve System."

23.    In advertising and marketing materials for the KLX Energy FRV, Defendant has represented that the Defendant's "system was designed to offer ZERO reduction of the unit's inside diameter running from the 1502 iron to the primary relief valve itself. This means that the system's pressure dump is almost instantaneous once it reaches the unit's pre-programmed parameters. Pressure release takes less than a quarter of a second." and that the "system was designed to eliminate the possibility of catastrophic pressure buildup during normal operation. It comes equipped with a secondary back-up valve that can be engaged to ensure zero downtime."

24.    In advertising and marketing materials for the KLX Energy FRV, Defendant has represented that:

  a.  "***Many oilfield service processes haven't changed much in the last 50 years***. At KLX Energy Services, we're re-examining the way everyday operations are performed

---

[3] https://www.klxenergy.com/ProductsServices/FracRelief (last accessed November 10, 2022).
[4] https://www.klxenergy.com/ProductsServices/PressureControlServices (last accessed November 11, 2022).

across the lifecycle of a well—looking for *new value-added technology*"[5] [Emphasis added];[6] and

b.  Our experienced field engineers understand what needs to happen in the field and can approach *new innovations* with an eye for practical, real-world perspective. The real key to KLX Energy Services' most value-added field innovations is our customers. We listen carefully to the needs of operators in the field, and their various challenges in eliminating avoidable NPT across every phase of the well's operation. As a result, we can arm our crews with *exclusive, proprietary tools and technology not available through any other oilfield service partner*. From *new levels of pressure control automation* to downhole tools that help better manage operational risk, *we're dedicated to pushing what's possible in oilfield service efficiency*. Market downturns don't affect our commitment to developing these *new innovations*. In fact, leaner times are when the industry most needs every operational and financial advantage possible." [Emphasis added].[7]

25.    Defendant KLX Energy has further represented to the market, including customers, potential customers, end-users, and shareholders:

"We have enhanced our hydraulic fracturing valve fleet line through the internal development of next generation technology, including our proprietary, patent pending hydraulic fracturing relief valve ("FRV"). Introduced in 2016, the FRV was built and designed to replace older 'pop-off' systems. When tied into a hydraulic fracturing core (pumps), the FRV gives customers a safer and more reliable method for relieving surface pressure in the event of an unforeseen pressure event. By doing this, we believe we minimize operational risk, as well as greatly reduce health, safety and environmental ("HSE") concerns that are associated with hydraulic fracturing operations."[8]

26.    The information provided on Defendant's website and promotional and marketing materials is for commercial purposes. Defendant's statements are intended to influence customer and end-user leasing and/or purchasing decisions. Defendant's statements are false and/or misleading. Plaintiff Safoco's FRV was available in the market prior to the Defendant's development and introduction of the KLX Energy FRV. Defendant KLX Energy was aware when

---

[5] *See* "KLX Frac Relief Valve System, Engineered Product," KLX Energy Services, a copy of which is attached as Exhibit C.
[6] Exhibit C.
[7] Exhibit C.
[8] *See* KLX Energy Services Holdings, Inc., Form 10-K, for fiscal year ending January 31, 2019, at p. 7; KLX Energy Services Holdings, Inc., Form 10-K, for fiscal year ending January 31, 2021 at p. 10.

they introduced the KLX Energy FRV to the oil and gas industry that the Defendant's frac relief valve device was not the first frac relief device on the market.

27.     From its introduction to the oil and gas industry in 2013 to the present, Safoco has advertised, promoted, and marketed the Safoco frac relief valve technology as the Safoco "FRV." Defendant intentionally chose to advertise, promote, and market its virtually identical frac relief device as the "FRV", to cause confusion among customers and potential customers and trade off the goodwill in the Safoco FRV.

28.     The Safoco FRV and the KLX Energy Infringing Device are very similar, if not identical in layout, components, appearance, and function:

**KLX Energy FRV**                      **Safoco FRV**

 

**KLX Energy FRV**                    **Safoco FRV**

                    

Figure 1 – Skid Front View

29.    In 2020, KLX Energy filed a design patent application seeking to patent the "ornamental design for pressure relief valve apparatus" as shown and described in the application:





FIG. 2

30.     Through its patent application, which is now a public record, KLX Energy claims and represents that it designed and invented the layout of the FRV skid unit, which allows the device to be easily moved and set-up on location, despite the fact that the claimed skid layout is virtually identical to the layout of the Safoco FRV, which had been introduced to the oil and gas industry several years prior to the KLX device:



Figure 1 – Skid Front View



**Figure 2 – Skid Left Side View**

## COUNT I:  INFRINGEMENT OF THE '794 PATENT

31. Safoco refers to and incorporates herein the allegations of Paragraphs 1 through 30 above.

32. Defendant directly or through intermediaries distributes, provides, supplies, offers for sale, sells, leases, markets, advertises, and otherwise provides frac relief valve products and systems that infringe one or more claims of the '794 Patent.

33. Defendant has directly infringed, and is directly infringing, one or more claims of the '794 Patent in this judicial district, in the State of Texas, and elsewhere in the United States. For example, Defendant's System infringes Claim 1 of the '794 Patent:

34.    Defendant has directly infringed, and is directly infringing, one or more claims of the '794 Patent in this judicial district, in the State of Texas, and elsewhere in the United States. For example, Defendant's Infringing Product infringes Claim 1 of the '794 Patent:

| CLAIM 1 OF THE '794 PATENT | DEFENDANT'S INFRINGING PRODUCT |
|---|---|
| A control system for controlling fluid flow through a flow line at a well site, the control system comprising: | Defendant's Infringing Product is a "control system for controlling fluid flow through a flow line at a well site, the control system", as recited in Claim 1 of the '794 Patent. |
| a fluid supply; | Defendant's Infringing Product has "a fluid supply", as recited in Claim 1 of the '794 Patent.    Defendant's Infringing Products satisfy the "fluid supply" element recited in Claim 1 of the '794 Patent. |
| a first fluid line in fluid communication with the fluid supply; | Defendant's Infringing Product has a "a first fluid line in fluid communication with the fluid supply," as recited in Claim 1 of the '794 Patent.    Defendant's Infringing Product satisfies the "first fluid line in fluid communication with the fluid supply" element recited in Claim 1 of the '794 Patent. |
| a pump in fluid communication with the first fluid line and configured to pump fluid from the fluid supply to one or more wellheads through the first fluid line; | Defendant's Infringing Product has "a pump in fluid communication with the first fluid line and configured to pump fluid from the fluid supply to one or more wellheads through the first fluid line", as recited in Claim 1 of the '794 Patent. Defendant's Infringing Product satisfies the "pump in fluid communication with the first fluid line and configured to pump fluid from the fluid supply to one or more wellheads through the first fluid line" element recited in Claim 1 of the '794 Patent. |
| a second fluid line in fluid communication with the first fluid line at a location downstream of the pump and configured to return fluid from the first fluid line to the fluid supply or another reservoir; | Defendant's Infringing Product has "a second fluid line in fluid communication with the first fluid line at a location downstream of the pump and configured to return fluid from the first fluid line to the fluid supply or another reservoir as recited in Claim 1 of the '794 Patent.    Defendant's Infringing Product this element, as recited in Claim 1 of the '794 Patent. |

| | |
|---|---|
| a safety valve in-line and having a gate normally maintained in a closed position to close fluid flow through the second fluid line; | Defendant's Infringing Product includes a "safety valve in-line and having a gate normally maintained in a closed position to close fluid flow through the second fluid line", as recited in Claim 1 of the '794 Patent. Defendant's Infringing Product satisfies the "safety valve in-line and having a gate normally maintained in a closed position to close fluid flow through the second fluid line," element recited in Claim 1 of the '794 Patent. |
| a valve actuator configured to move the gate into the closed position by fluid supplied into the valve actuator and configured to move the gate into an open position by a biasing member disposed in the valve actuator; | Defendant's Infringing Product has "a valve actuator configured to move the gate into the closed position by fluid supplied into the valve actuator and configured to move the gate into an open position by a biasing member disposed in the valve actuator", as recited in Claim 1 of the '794 Patent. Defendant's Infringing Product satisfies the "a valve actuator configured to move the gate into the closed position by fluid supplied into the valve actuator and configured to move the gate into an open position by a biasing member disposed in the valve actuator" element recited in Claim 1 of the '794 Patent. |
| an electronic controller assembly programmed with a predetermined condition and configured to receive a signal from a transducer connected to the first fluid line, | Defendant's Infringing Product has "an electronic controller assembly programmed with a predetermined condition and configured to receive a signal from a transducer connected to the first fluid line," as recited in Claim 1 of the '794 Patent. Defendant's Infringing Product satisfies the "electronic controller assembly programmed with a predetermined condition and configured to receive a signal from a transducer connected to the first fluid line," element recited in Claim 1 of the'794 Patent. |
| wherein the signal corresponds to a measured physical property; | Defendant's Infringing Product includes the element of "wherein the signal corresponds to a measured physical property," as recited in Claim 1 of the '794 Patent. The measured property here is pressure. Defendant's Infringing Product satisfies the "wherein the signal corresponds to a measured physical property," element recited in Claim 1 of the '794 Patent. |

15

| | |
|---|---|
| a valve assembly in communication with the controller assembly; and | Defendant's Infringing Product has "a valve assembly in communication with the controller assembly," as recited in Claim 1 of the '794 Patent. The valve assembly is how the pressure is vented in an over pressurization event. |
| a fluid drive assembly in communication with the controller assembly, wherein the controller assembly is operable to actuate the fluid drive assembly to supply fluid into the valve actuator to move the gate into the closed position, and wherein the controller assembly is operable to actuate the valve assembly in response to a comparison of the measured physical property to the predetermined condition to release the fluid from the valve actuator  so that the biasing member moves the gate into the open position, forces the fluid out of the valve actuator, and thereby opens fluid flow through the second fluid line to return fluid in the first fluid line back to the fluid supply or another reservoir. | Defendant's Infringing Product has " a fluid drive assembly in communication with the controller assembly, wherein the controller assembly is operable to actuate the fluid drive assembly to supply fluid into the valve actuator to move the gate into the closed position, and wherein the controller assembly is operable to actuate the valve assembly in response to a comparison of the measured physical property to the predetermined condition to release the fluid from the valve actuator  so that the biasing member moves the gate into the open position, forces the fluid out of the valve actuator, and thereby opens fluid flow through the second fluid line to return fluid in the first fluid line back to the fluid supply or another reservoir," as recited in Claim 1 of the '794 Patent.    Defendant's Infringing Product satisfies the "a fluid drive assembly in communication with the controller assembly, wherein the controller assembly is operable to actuate the fluid drive assembly to supply fluid into the valve actuator to move the gate into the closed position, and wherein the controller assembly is operable to actuate the valve assembly in response to a comparison of the measured physical property to the predetermined condition to release the fluid from the valve actuator  so that the biasing member moves the gate into the open position, forces the fluid out of the valve actuator, and thereby opens fluid flow through the second fluid line to return fluid in the first fluid line back to the fluid supply or another reservoir," element recited in Claim 1 of the '794 Patent. |

35.     Defendant's Infringing Product satisfies each element of Claim 1 of the '794 Patent; and therefore, directly and literally infringes the '794 Patent.   Defendant's Infringing Products also similarly infringe other claims of the '794 Patent.

36.     Defendant has infringed, and is infringing the '794 Patent, either literally or under the doctrine of equivalents, without the consent or authorization of Plaintiff Safoco, by making, using, offering for sale, selling, and /or leasing the accused device.   Defendant has engaged in these activities within this judicial district, the State of Texas, and elsewhere in the United States, without the consent of Plaintiff Safoco.

37.     Defendant also infringes under 35 U.S.C. § 271(b) and (c) by inducing and/or contributing to infringement of the '794 Patent in this judicial district, the State of Texas, and elsewhere in the United States, literally or under the doctrine of equivalents, by, among other things, performing certain elements of the methods and systems claimed by the '794 Patent, and advising, encouraging, contributing, or otherwise inducing others to perform the remaining elements claimed by the '794 Patent to the injury of Plaintiff Safoco .

38.     Defendant has had both actual and constructive notice of the '794 Patent. Defendant knew of the '794 Patent and specifically intended to infringe the '794 Patent.  Defendant intentionally copied Safoco's patented product.   Accordingly, Defendant has and is willfully and intentionally infringing the '794 Patent.

39.     Plaintiff Safoco is entitled to recover from Defendant the damages sustained by Safoco from the Defendant's infringing conduct, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.   Plaintiff Safoco requests compensation for Defendant's past infringement and for any future infringement.

40.    Plaintiff Safoco and Defendant are direct competitors.  Defendant's unlawful infringement of the '794 Patent has caused immediate and irreparable injury, and unless it is enjoined, its continued infringement will cause Safoco injury for which there is no adequate remedy at law.

## COUNT II:  INFRINGEMENT OF THE '609 PATENT

41.    Safoco refers to and incorporates herein the allegations of Paragraphs 1 through 40 above.

42.    Defendant directly or through intermediaries distributes, provides, supplies, offers for sale, sells, leases, markets, advertises, and otherwise provides frac relief valve products and systems that infringe the '609 Patent.

43.    Defendant has directly infringed, and is directly infringing, one or more claims of the '794 Patent in this judicial district, in the State of Texas, and elsewhere in the United States. For example, Defendant's System Infringing Product infringes Claim 1 of the '609 Patent. Representative Claim 1 of the '609 Patent is recited as follows:

| CLAIM 1 OF THE '609 PATENT | DEFENDANT'S INFRINGING PRODUCT |
|---|---|
| A control system for controlling fluid flow through a flow line at a well site, the control system comprising: | Defendant's Infringing Product is a "control system for controlling fluid flow through a flow line at a well site," as recited in Claim 1 of the '609 Patent.  Defendant's Infringing Product satisfies the preamble of Claim 1 of the '609 Patent. |
| a fluid supply; | Defendant's Infringing Product has "a fluid supply", as recited in Claim 1 of the '609 Patent.  Defendant's Infringing Products satisfy the "fluid supply" element recited in Claim 1 of the '609 Patent. |
| a first fluid line in fluid communication with the fluid supply; | Defendant's Safety has a "first fluid line in fluid communication with the fluid supply," as recited in Claim 1 of the '609 Patent. Defendant's Infringing Product satisfies the |

| | "first fluid line in fluid communication with the fluid supply" element recited in Claim 1 of the '609 Patent. |
|---|---|
| a pump in fluid communication with the first fluid line and configured to pump fluid from the fluid supply to one or more wellheads through the first fluid line; | Defendant's Infringing Product has "a pump in fluid communication with the first fluid line and configured to pump fluid from the fluid supply to one or more wellheads through the first fluid line," as recited in Claim 1 of the '609 Patent. Defendant's Infringing Product satisfies the "a pump in fluid communication with the first fluid line and configured to pump fluid from the fluid supply to one or more wellheads through the first fluid line" element recited in Claim 1 of the '609 Patent. |
| a second fluid line in fluid communication with the first fluid line at a location downstream of the pump and configured to return fluid from the first fluid line back to the fluid supply or direct fluid from the first fluid line to a different reservoir; | Defendant's Infringing Product has a "second fluid line in fluid communication with the first fluid line at a location downstream of the pump and configured to return fluid from the first fluid line back to the fluid supply or direct fluid from the first fluid line to a different reservoir", as recited in Claim 1 of the '609 Patent. Defendant's Infringing Product satisfies the "a second fluid line in fluid communication with the first fluid line at a location downstream of the pump and configured to return fluid from the first fluid line back to the fluid supply or direct fluid from the first fluid line to a different reservoir," element recited in Claim 1 of the '609 Patent. |
| a safety valve in-line with second fluid line and moveable into a closed position to an open position to pen fluid flow through the second fluid line; | Defendant's Infringing Product has "a safety valve in-line with second fluid line and moveable into a closed position to an open position to open fluid flow through the second fluid line", as recited in Claim 1 of the '609 Patent. Defendant's Infringing Product satisfies the "safety valve in-line with second fluid line and moveable into a closed position to an open position to open fluid flow through the second fluid line" element recited in Claim 1 of the '609 Patent. |
| a valve actuator configured to actuate the safety valve from the closed position to an open position to open fluid flow through the second fluid line; | Defendant's Infringing Product has "a valve actuator configured to actuate the safety valve from the closed position to an open position to open fluid flow through the second fluid line," as recited in Claim 1 of the '609 Patent. Defendant's Infringing Product satisfies the |

| | |
|---|---|
| | "valve actuator configured to actuate the safety valve from the closed position to an open position to open fluid flow through the second fluid line," element recited in Claim 1 of the '609 Patent. |
| an electronic controller assembly programmed with a predetermined condition and configured to receive a signal from a transducer connected to the first fluid line, wherein the signal corresponds to a measured physical property; | Defendant's Infringing Product has "an electronic controller assembly programmed with a predetermined condition and configured to receive a signal from a transducer connected to the first fluid line, wherein the signal corresponds to a measured physical property," as recited in Claim 1 of the '609 Patent. Defendant's Infringing Product satisfies the "an electronic controller assembly programmed with a predetermined condition and configured to receive a signal from a transducer connected to the first fluid line, wherein the signal corresponds to a measured physical property," element recited in Claim 1 of the '609 Patent. |
| a valve assembly in communication with the controller assembly; and | Defendant's Infringing Product has "a valve assembly in communication with the controller assembly," as recited in Claim 1 of the '609 Patent.    Defendant's Infringing Product satisfies the "valve assembly in communication with the controller assembly" element recited in Claim 1 of the '609 Patent. |
| a fluid drive assembly in communication with the controller assembly, wherein the controller assembly is operable to actuate the fluid drive assembly to supply fluid to the valve actuator to move the safety valve into the closed position, and wherein the controller assembly is operable to actuate the valve assembly in response to a comparison of the measured physical property to the predetermined condition to release the fluid from the valve actuator to move the safety valve into the open position, and thereby open fluid flow through the second fluid line to return fluid in the first fluid line back to the fluid supply or direct fluid in the first fluid line to the different reservoir. | Defendant's Infringing Product has "a fluid drive assembly in communication with the controller assembly, wherein the controller assembly is operable to actuate the fluid drive assembly to supply fluid to the valve actuator to move the safety valve into the closed position, and wherein the controller assembly is operable to actuate the valve assembly in response to a comparison of the measured physical property to the predetermined condition to release the fluid from the valve actuator to move the safety valve into the open position, and thereby open fluid flow through the second fluid line to return fluid in the first fluid line back to the fluid supply or direct fluid in the first fluid line to the different reservoir," as recited in Claim 1 of the '609 Patent. Defendant's Infringing Product satisfies the "a |

| | |
|---|---|
| | fluid drive assembly in communication with the controller assembly, wherein the controller assembly is operable to actuate the fluid drive assembly to supply fluid to the valve actuator to move the safety valve into the closed position, and wherein the controller assembly is operable to actuate the valve assembly in response to a comparison of the measured physical property to the predetermined condition to release the fluid from the valve actuator to move the safety valve into the open position, and thereby open fluid flow through the second fluid line to return fluid in the first fluid line back to the fluid supply or direct fluid in the first fluid line to the different reservoir," element recited in Claim 1 of the '609 Patent. |

44.     Defendant's Infringing Product satisfies each and every element of at least Claim 1 of the '609 Patent; and therefore, directly and literally infringes Claim 1 of the '609 Patent.

45.     Defendant has infringed, and is infringing the '609 Patent, either literally or under the doctrine of equivalents, without the consent or authorization of Plaintiff Safoco, by making, using, offering for sale, selling, and /or leasing the Defendants' products.  Defendant has engaged in these activities within this judicial district, the State of Texas, and elsewhere in the United States, without the consent of Plaintiff Safoco.

46.     Defendant also infringes under 35 U.S.C. § 271(b) and (c) by inducing and/or contributing to infringement of the '609 Patent in this judicial district, the State of Texas, and elsewhere in the United States, literally or under the doctrine of equivalents, by, among other things, performing certain elements of the methods and systems claimed by the '609 Patent, and advising, encouraging, contributing, or otherwise inducing others to perform the remaining elements claimed by the '609 Patent to the injury of Plaintiff Safoco.

47.     Defendant has always had actual and constructive notice of the '609 Patent. Defendant intentionally copied Safoco's patented FRV system.  As a result, Defendant is and has been willfully and intentionally infringing the '609 Patent.

48.     Plaintiff Safoco is entitled to recover from Defendant the damages sustained by Safoco as a result of Defendant's infringing conduct, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284. Plaintiff Safoco requests compensation for Defendant's past infringement and for any future infringement.

49.     Defendant's unlawful infringement of the '609 Patent has caused immediate and irreparable injury, and unless it is enjoined, its continued infringement will cause Safoco injury for which there is no adequate remedy at law.

### COUNT III: FALSE ADVERTISING – 15 U.S.C. § 1125(A)(1), LANHAM ACT § 43(A)(1)

50.     Safoco refers to and incorporates herein the allegations of Paragraphs 1 through 49 above.

51.     Defendant have engaged in commercial advertising and/or promotional activities relating to the Infringing Products; and during these commercial activities, Defendant         have engaged in false advertising by false description of fact and/or false representation of fact in violation of 15 U.S.C. § 1125(a).

52.     Defendant made false and misleading statements regarding the Infringing Device, about Defendant KLX Energy, and about Defendant KLX Energy's activities.  Such false and misleading statements include, but are not limited to the following:

a.  Defendant advertising and representing that the KLX Energy FRV utilizes a "proprietary "'fail-open' design and self-reporting diagnostic alert to ensure total field safety." [9]

b.  Defendant advertising and representing that the company offers "[p]roprietary technologies such as the KLX Automated Frac Relief Valve System – an automated alternative to conventional pop-off valves.  This new solution brings more assurance, reliability and redundancy to pressure control."[10]

c.  Defendant representing that "[w]e have enhanced our hydraulic fracturing valve fleet line through the internal development of next generation technology, including our proprietary, patent pending hydraulic fracturing relief valve ("FRV").  Introduced in 2016, the FRV was built and designed to replace older 'pop-off' systems.  When tied into a hydraulic fracturing core (pumps), the FRV gives customers a safer and more reliable method for relieving surface pressure in the event of an unforeseen pressure event.  By doing this, we believe we minimize operational risk, as well as greatly reduce health, safety and environmental ("HSE") concerns that are associated with hydraulic fracturing operations."[11]

d.  Defendant describing the KLX Energy FRV as an "innovative alternative to the standard popoff valve that offers more control over pressure during hydraulic fracturing operations."

e.  Defendant advertising and representing that the "system was designed to offer ZERO reduction of the unit's inside diameter running from the 1502 iron to the primary relief valve itself. This means that the system's pressure dump is almost instantaneous once it reaches the unit's pre-programmed parameters. Pressure release takes less than a quarter of a second."[12]

f.  Defendant advertising and representing that the "system was designed to eliminate the possibility of catastrophic pressure buildup during normal operation. It comes equipped with a secondary back-up valve that can be engaged to ensure zero downtime."[13]

g.  "***Many oilfield service processes haven't changed much in the last 50 years***. At KLX Energy Services, we're re-examining the way everyday operations are performed across the lifecycle of a well—looking for ***new value-added technology***" [Emphasis added];[14] and

---

[9] https://www.klxenergy.com/ProductsServices/FracRelief (last accessed November 10, 2022).

[10] https://www.klxenergy.com/ProductsServices/PressureControlServices (last accessed November 10, 2022).

[11] *See* KLX Energy Services Holdings, Inc., Form 10-K, for fiscal year ending January 31, 2019, at p. 7; KLX Energy Services Holdings, Inc., Form 10-K, for fiscal year ending January 31, 2021 at p. 10.

[12] *See* "KLX Frac Relief Valve System, Engineered Product," KLX Energy Services, a copy of which is attached as Exhibit C.

[13] Exhibit C.

[14] Exhibit C.

h. "Our experienced field engineers understand what needs to happen in the field, and can approach ***new innovations*** with an eye for practical, real-world perspective. The real key to KLX Energy Services' most value-added field innovations is our customers. We listen carefully to the needs of operators in the field, and their various challenges in eliminating avoidable NPT across every phase of the well's operation. As a result, we can arm our crews with ***exclusive, proprietary tools and technology not available through any other oilfield service partner***. From ***new levels of pressure control automation*** to downhole tools that help better manage operational risk, ***we're dedicated to pushing what's possible in oilfield service efficiency***. Market downturns don't affect our commitment to developing these ***new innovations***. In fact, leaner times are when the industry most needs every operational and financial advantage possible." [Emphasis added].[15]

53.     These statements state or imply falsely and misleadingly that Defendant KLX Energy was the developer and owner of the frac relief technology, including the "fail open" design and "self-reporting diagnostic alert", when in fact Safoco was the developer and owner of the proprietary frac relief technology.  Defendant's statements are false because Plaintiff Safoco's FRV was available in the market prior to the Defendant's development and introduction of the KLX Energy FRV to the market.  Defendant KLX Energy was aware when they introduced the KLX Energy FRV to the oil and gas industry and market that the Defendant's frac relief valve device was not the first frac relief device on the market.

54.     These statements state or imply falsely and misleadingly that Defendant KLX Energy there is a risk in using technology of parties other than KLX Energy, including Safoco and others.  As detailed herein, the facts are contrary to Defendant's false and misleading statements that Defendant or its "FRV" product or technology was first or expressly or impliedly superior for that reason.  Defendant's false and misleading statements omit facts that demonstrate the falsity and misleading nature of the statements.

---

[15] Exhibit C.

55.    These false and misleading statements in materials on Defendant's website and in promotional, advertising, and other materials are available to Safoco's customers and potential customers.

56.    Defendant intended for customers and potential customers to rely on Defendants' statements.

57.    Defendant's statements are likely to deceive customers and potential customers or have a tendency to deceive at least a substantial portion of the intended audience, into believing that Defendant invented, designed, and/or developed the FRV, that Defendant was the first to offer the FRV device to the oil and gas industry and market, and that the Defendant's frac relief valve device was superior for that reason.

58.    Defendant markets, promotes, sells and/or leases the Infringing Products in interstate commerce.

59.    These statements in commerce and in commercial advertising constitute a false and misleading description of fact and a false and misleading representation of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics, and qualities of goods, services, and commercial activities.

60.    As a result of its wrongful conduct, Defendant is liable to Safoco for violation of 15 U.S.C. § 1225(a), which provides in relevant part that a "person who, or in connection with any goods or services . . . uses in commerce any . . . false or misleading description of fact or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable to a civil action by any person who believes that he or she is likely to be damaged by such act."

25

61.     As a direct and proximate result of Defendant's false and misleading statements, Defendant has been unjustly enriched.   Defendant made profits to which it is not entitled in law or in equity.

62.     As a direct and proximate result of Defendant's false and misleading statements, Plaintiff Safoco has sustained, and continues to suffer, competitive harm in its business, reputation, and goodwill as a result of Defendant's false and/or misleading statements.

63.     Defendant's acts are willful, wanton and calculated to deceive, and are undertaken in bad faith, making this an exceptional case entitling Safoco to recover additional damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## JURY TRIAL

64.     Pursuant to Fed. R. Civ. P. 38 and 39, Safoco hereby demands a trial by jury.

## PRAYER

WHEREFORE, Plaintiff Safoco, Inc., prays that the Court grant the following relief against Defendant KLX Energy Services, LLC:

A.     Judgment in favor of Plaintiff Safoco, Inc., and against KLX Energy Services, LLC for infringement of the Safoco Patents;

B.     Preliminary and permanent injunctions, enjoining KLX Energy Services, LLC, and those in privity with or acting in concert with it from further infringement of the '794 Patent and the '609 Patent during the remaining the term of the Safoco Patents;

C.     Declaring that KLX Energy Services, LLC 's infringement of the '794 Patent and the '609 Patent is willful;

D.     Damages against KLX Energy Services, LLC adequate to compensate Safoco, Inc., for such acts of patent infringement;

E.      Declaring this case exceptional and awarding Safoco, Inc., its reasonable attorneys' fees in accordance with 35 U.S.C. § 285;

F.      Damages and other remedies as a result of KLX Energy Services, LLC's false and misleading claim in advertising, including without limitation, Safoco, Inc.'s lost profits, disgorgement of KLX Energy Services, LLC's profits;

G.      Declaring this case exceptional as a result of KLX Energy Services, LLC's false and misleading claim in advertising and awarding Safoco, Inc., its reasonable attorneys' fees;

H.      Award of Interest and costs; and

I.      Such other and further relief as is just and proper.

Respectfully submitted

ANDERSON & CUNNINGHAM, P.C.

*/s/David K. Anderson*
David K. Anderson
david@andersonlawfirm.com
SBT No. 01174100
SDT No. 7405
ATTORNEY-IN-CHARGE
Julie B. Cunningham
julie@andersonlawfirm.com
SBT No. 05240700
SDT No. 15051
Four Houston Center
1221 Lamar, Suite 1115
Houston, Texas 77010
Telephone: 713.655.8400
FAX: 713.655.0260

ATTORNEYS FOR PLAINTIFF SAFOCO, INC.